UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:25-CV-00044-GNS-HBB

**ERIC D.**[1]  **PLAINTIFF**

**VS.**

**FRANK BISIGNANO, COMMISSIONER OF
SOCIAL SECURITY**  **DEFENDANT**

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION

### I. BACKGROUND

Before the Court is the Complaint (DN 1) of Eric D. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff (DN 12) and Defendant (DN 17) have filed a Fact and Law Summary.  For the reasons that follow, the undersigned **RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner, and judgment be **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(b)(1)(B), this matter has been referred to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation (DN 7).  By Order entered May 30, 2025 (*Id.*), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.  No such request was filed.

### II. FINDINGS OF FACT

On July 8, 2022, Plaintiff protectively filed an application for Disability Insurance Benefits

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

(Tr. 237-43).² Plaintiff alleged that he became disabled on January 1, 2022, as a result of bipolar disorder, diabetes, neurological issues, inability to drive, bad balance, and inability to read without mumbling (Tr. 120). The application was denied initially on November 2, 2022 (Tr. 120-27), and upon reconsideration on March 30, 2023 (Tr. 129-38). On April 24, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 159-61).

On October 10, 2023, ALJ Antony Saragas conducted a telephonic hearing (Tr. 15). Plaintiff and his attorney, Stacey Hardin Hibbard, participated in the hearing (*Id.*). Robert Piper, an impartial vocational expert, testified at the hearing (*Id.*). In a decision dated January 9, 2024, ALJ Saragas evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commission (Tr. 15-31). The ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2026 (Tr. 17). At the first step, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 1, 2022 (*Id.*). At the second step, the ALJ determined that Plaintiff has the following severe impairments: depression, anxiety, and neurocognitive disorder; essential tremors; diabetes; and obesity (Tr. 18). The ALJ concluded that Plaintiff has the following non-severe impairments: obstructive sleep apnea and hypothyroidism (*Id.*). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 18-21).

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 404.1567(c), except he can lift and carry up to 50 pounds occasionally and 25 pounds frequently; he can sit, stand, and walk for 6 hours each in

---

2  Plaintiff previously applied for disability benefits in April 2012 but was denied (Tr. 88-108).

an 8-hour day; he can never climb ladders, ropes, or scaffolds but he occasionally can climb ramps and stairs, stoop, kneel, crouch, and crawl; he cannot be exposed to workplace hazards (such as unprotected heights or moving mechanical parts); he cannot be exposed to or work on uneven terrain; he cannot perform commercial driving; he can remember, understand, and carry out instructions for the performance of simple, routine, repetitive tasks except that he cannot work at a production rate pace (i.e., a pace that is affecting or affected by the pace of others such as assembly line work); he can have only occasional changes in the workplace environment and/or routine; and he can have only occasional interaction with supervisors, coworkers, and the public (Tr. 21). The ALJ found that Plaintiff could not perform any past relevant work (Tr. 29-30).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, he can perform jobs that exist in significant numbers in the national economy (Tr. 30-31). Therefore, the ALJ concluded that Plaintiff was not under a disability from January 1, 2022, through the date of the decision (Tr. 31). Plaintiff filed a request for the Appeals Council to review the ALJ's decision, but the Appeals Council denied Plaintiff's request (Tr. 1-6, 226-30).

### III. CONCLUSIONS OF LAW

#### A. Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even

if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6), the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court reviews the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

### B. The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits to persons with disabilities. 42 U.S.C. §§ 401 et seq. The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. § 404.1520. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or

4

combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. § 404.1520(a)(4)(i)-(v).

### C. RFC Finding

*1. Arguments of the Parties*

Plaintiff avers that the ALJ's decision is not supported by substantial evidence because the RFC finding does not "accurately reflect the nature and extent" of his impairments (DN 12-1 PageID # 770). Specifically, Plaintiff believes that the ALJ's RFC determination does not account for when his mental impairment symptoms are severe (*Id.* at PageID # 771). Because his symptoms wax and wane, Plaintiff argues he has trouble maintaining employment when symptoms become severe (*Id.*). Further, Plaintiff contends that reasonable minds could not accept that the medical evidence supports the RFC finding, pointing to the ALJ's failure to incorporate the limitations from the neuropsychologist's opinion (*Id.*). Because of these errors, Plaintiff asks that the ALJ's decision be remanded for a new hearing (*Id.* at PageID # 772).

In response, Defendant avers that the ALJ's RFC finding is supported by substantial evidence because ALJ Saragas considered all the evidence and medical opinions in the record (DN 17 PageID # 787-88). Furthermore, Defendant contends that Plaintiff is essentially asking the Court to reweigh the evidence, which it cannot do (*Id.* at PageID # 788, 791-92).

5

*2. Applicable Law*

The RFC determination is the ALJ's ultimate determination of what a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). ALJs make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Thus, in making the RFC determination ALJs must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

In assessing a claimant's RFC, the ALJ must necessarily consider the subjective allegations of the claimant and make findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 16-3p. A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986), applies.

First, the ALJ must "examine whether there is objective medical evidence of an underlying medical condition." *Id*. If there is, then the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Id*. When, as in this case, the reported

6

symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the ALJ will consider other information and factors which may be relevant to the degree of pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

   *3. Discussion*

ALJ Saragas determined that Plaintiff was capable of medium work with exertional, environmental, and mental limitations (Tr. 21). Plaintiff asserts that while the "ALJ did not dispute [that his] impairments are severe at times" ALJ Saragas failed to "explain how [he] could perform full-time work and remain employed when his symptoms are severe." (DN 12-1 PageID # 771). Plaintiff believes:

> The medical evidence from Ms. McIlvoy and Ms. McKenna shows Mr. Donaldson had a very difficult time maintaining employment for more than short periods of time when his condition was severe. The ALJ's RFC is based on a worker who can work eight hours a day, five days a week. It may allow for work when his symptoms are mild, but the RFC is static; it is the same regardless of his mood and symptomology. It does not address waxing and waning symptoms.

(*Id.*). Plaintiff's argument rests on a different understanding of the RFC finding and its purpose. The RFC finding is not "based on a worker who can work eight hours a day, five days a week" (*Id.*) but personalized to consider the claimant's specific "physical and mental limitations that affect what [he or she] can do in a work setting." 20 C.F.R. § 404.1545(a). Furthermore, a proper determination of a claimant's RFC inherently acknowledges the waxing and waning of symptoms. *See Johnathan M. v. Comm'r of Soc. Sec.*, No. 24-12440, 2025 U.S. Dist. LEXIS 193331, at *5 (E.D. Mich. Sep. 30, 2025) ("[T]he ALJ properly considered plaintiff's subjective symptoms and addressed 'treatment records that show exacerbation of symptoms but [that he] is generally stable on medication.[']. . . Plaintiff's argument that his subjective symptoms had a more significant impact on him than is reflected in the decision is merely an invitation for the Court to

reweigh the evidence presented to the ALJ."). Indeed, it is common sense that the majority of disabling conditions include symptoms that wax and wane, such as back pain that is aggravated by physical exertion but soothed by medication and rest—thus exertional limitations are included in the RFC finding.

Here, Plaintiff asserts that the RFC finding does not accurately reflect his capacity when his psychological symptoms are severe (DN 12-1 PageID # 770-71). ALJ Saragas found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 22). ALJ Saragas considered Plaintiff's reports of "depressed mood, anxiety, situational stressors, fatigue, trouble concentrating, short-term memory problems, loosing [sic] balance, and feeling slow" as well as experiencing "shakiness/tremors, primarily in his left upper extremity, which he said tends to occur when he is stressed." (Tr. 22). ALJ Saragas considered primary care treatment records that showed screening scores for depression and anxiety to be in the mild to severe range, but that Plaintiff reported that medication improved his symptoms (Tr. 23) (citing Tr. 379-484).

ALJ Saragas noted the waxing and waning of Plaintiff's symptoms, ultimately finding that medication managed his symptoms:

> In August 2022, he said he was feeling okay emotionally. (Exhibit B7F) Claimant reported being more depressed than usual in December 2022, but in February 2023 he said his medication helped his anxiety. (Exhibit B7F and B17F) Claimant reported in May 2023 that his psychiatric medication seemed to be working well. In August 2023, claimant reported he was doing well on Vraylar, that his symptoms of anxiety and depression were well controlled, and that he did not have negative thoughts. (Exhibit B21F)

(Tr. 23). An ALJ is not obligated to determine the RFC finding based on the claimant's worst reported symptoms, but the claimant's capacity in light of treatment. *See Carter v. Comm'r of Soc. Sec.*, No. 5:22-CV-00367-BYP, 2023 U.S. Dist. LEXIS 16837, at *39-46 (N.D. Ohio Jan. 6,

2023) (ALJ properly considered waxing and waning of claimant's mental health symptoms in conjunction with treatment efficacy). In sum, while Plaintiff's symptoms can be severe, because Plaintiff's symptoms are responsive to treatment (i.e. medication), ALJ Saragas properly considered Plaintiff's capabilities in light of his mitigated, treatment-responsive symptoms—not Plaintiff's most severe symptomology.

Undergirding Plaintiff's argument is his general disagreement with the ALJ's determination of the medical evidence and ultimate conclusion that Plaintiff is capable of medium work (DN 12-1 PageID # 770-71). Plaintiff believes that the ALJ should have adopted the limitations opined by Dr. Anderson-Mooney in a neurocognitive exam performed in 2023 (*Id.* at PageID # 765-66, 768, 771) (citing Tr. 594-99, 26, 28). While Plaintiff cogently articulates why the evidence supports a different RFC finding, the undersigned reviews the ALJ's decision for substantial evidence. "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695 (quoting *Casey*, 987 F.2d at 1233).

Plaintiff acknowledges that an "ALJ need not incorporate every limitation from a medical source's recommendation, even if it finds that medical source to be persuasive." *Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 U.S. App. LEXIS 12174, at *7-8 (6th Cir. May 20, 2024). Yet Plaintiff complains that the ALJ should have adopted Dr. Anderson-Mooney's opinion and imposed greater limitations in the RFC finding (DN 12-1 PageID # 771). When evaluating a medical opinion for persuasiveness, supportability and consistency are the two more important factors. 20 C.F.R. § 404.1520c(a) and (b)(2). Supportability is found where: "The more relevant the objective medical evidence and supporting explanations presented by a medical source

are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Consistency exists where: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Plaintiff essentially contends that supportability and consistency need not be considered because Dr. Anderson-Mooney is the "only provider capable of interpreting" the neurocognitive examination "and applying it to [his] circumstances" (DN 12-1 PageID # 771). Further, Plaintiff avers that "[n]o other medical provider was capable of testing [him] from a neurocognitive perspective" and that Dr. Anderson-Mooney is an expert in her field, so "[i]t is natural she obtained results no other medical provider obtained because no other medical provider performed the same tests and none appeared qualified to do so" (*Id.*). Thus, according to Plaintiff, because "[o]ne would not expect to see the same findings in routine office notes" Dr. Anderson-Mooney's opinion is the "best evidence" and should have been adopted (*Id.*).

ALJ Saragas considered Dr. Anderson-Mooney's neurocognitive testing and opinion:

> The undersigned also has considered claimant's educational history and the results of neurocognitive testing administered by Amelia Anderson Mooney, Ph.D., in February 2023 and March 2023. Notably, claimant completed high school and obtained a CNA license. Nonetheless, he told Dr. Mooney[3] that he had learning difficulties in school and received special education. Dr. Mooney's test results suggest some degree of cognitive impairment. For example, on a measure of premorbid and general cognitive functioning, claimant earned a score of 88 (which is in the low average range) on the word reading component of the Wide Range Achievement Test (WRAT), while results relating to general fund of semantic knowledge suggested an average baseline (with a WAIS-IV information score of

---

3  To clarify, ALJ Saragas refers to Dr. Anderson-Mooney as "Dr. Mooney" but they are the same person (*See* Tr. 599).

10

> 100 and a KBIT-2 verbal knowledge score of 95), with relative preservation of visuospatial skills. (Exhibit B9F)

(Tr. 26). The ALJ next recounted the results of the neurocognitive testing then remarked:

> Of note, however, having reviewed all of the test results, Dr. Mooney cautioned in the "clinical impressions" section of her examination report that claimant's "current neurocognitive profile is likely an underestimate of his true neurocognitive capacities given indications of reduced performance validity across metrics." (Exhibit B9F)

(*Id.*). Plaintiff does not offer any alternative understanding of this portion of Dr. Anderson-Mooney's report. Thus, ALJ Saragas determined, together with supportability and consistency with other medical evidence of record, that

> Given this cautionary statement, and the fact that treatment records from claimant's primary care provider and neurologist do not reflect abnormalities as significant as those from the neurocognitive examination, the undersigned is more persuaded by the treatment notes of the primary care provider and neurologist. Primary care treatment notes document scores on the PHQ-9 and GAD-7 which alternate from mild to severe depression and anxiety respectively, and they document findings of abnormal mood and affect as referenced above. Otherwise, however, primary care treatment records do not document abnormal mental status findings. Specifically, they document few, if any, findings of abnormal memory, concentration, attention, insight, or judgment. (Exhibits B2F, B7F, B8F, B17F, and B21F) Likewise, a June 2022 neurology treatment note reports claimant to have had some mild word finding difficulties, and in November 2022, claimant earned a 22 out of 30 on the MOCA. Neurology treatment records, however, also document few, if any, findings of abnormal memory, concentration, attention, insight, or judgment. (Exhibits B1F, B5F, and B19F) The findings of the primary care provider and neurologist support that claimant can perform to simple, routine, repetitive tasks, but not at a production rate pace, and with only occasional changes in the workplace environment/routine.
>
> Claimant did not regularly report to his primary care provider or neurologist having difficulty interacting with others. In fact, his primary care provider repeatedly noted him to exhibit good eye contact. Nonetheless, his primary care provider noted him to have clear, but slow speech, and his neurologist characterized the cadence of his speech to be slow. (Exhibits B1F and B2F) The undersigned also observed his speech to be slow at the hearing. Thus, it is reasonable to conclude claimant may have some difficulty with social interaction. As noted above, during neurocognitive examination, a measurement of emotional/effective functioning suggested severe concerns, but Dr. Mooney cautioned that due to responses which

11

>were prominently negative based on established indicators, she believed this measurement may have overestimated claimant's actual affective distress. Even so, claimant reported interpersonal suspicion to Dr. Mooney, i.e., that he was afraid others are talking about him. Given claimant's slow speech, Dr. Mooney's cautionary statement regarding the measurement of emotional/affective functioning, and claimant's subjective reports to Dr. Mooney, the undersigned finds it reasonable to limit claimant to only occasional interaction with supervisors, coworkers and the public. (Exhibit B9F)

(Tr. 26-27) (footnote omitted). ALJ Saragas properly evaluated Dr. Anderson-Mooney's opinion considering supportability and consistency with the relevant medical evidence as required by the regulations. 20 C.F.R. § 404.1520c. In his opinion, ALJ Saragas addressed Dr. Anderson-Mooney's opinion in detail and cited to relevant medical evidence during his discussion (*See* Tr. 26-27). ALJ Saragas cross-referenced Plaintiff's symptoms with records from his primary care provider or neurologist when addressing supportability and consistency (*See id.*).

Plaintiff does not cite any case or regulation that permits an ALJ to ignore supportability and consistency when evaluating a medical opinion, and neither does Plaintiff specifically address supportability or consistency in his argument. Thus, because ALJ Saragas did not err in considering Dr. Anderson-Mooney's opinion and finding it less than persuasive in determining Plaintiff's RFC, Plaintiff's exhortation that the ALJ should have adopted all the limitations opined by Dr. Anderson-Mooney because she is a specialist and performed unique testing is inapposite.

In sum, the ALJ properly considered Dr. Anderson-Mooney's opinion and evaluated it for persuasiveness. Further, no error exists where the ALJ formulated the RFC finding in light of treatment. Because the resulting RFC finding is supported by substantial evidence and comports with applicable law, the undersigned finds no error.

### D. Conclusion

In conclusion, because the ALJ's decision is supported by substantial evidence and

comports with applicable law, the undersigned must defer to his determination. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how the undersigned may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Therefore, Plaintiff is not entitled to relief with regard to his challenge.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that that Court **AFFIRM** the final decision of the Commissioner, and judgment be **GRANTED** for the Commissioner.

*H. Brent Brennenstuhl*
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

January 22, 2026

## V. NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and FED. R. CIV. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall be electronically transmitted or mailed to all parties. Within fourteen days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party objects, such objections must be timely filed, or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).

H. Brent Brennenstuhl
United States Magistrate Judge

January 22, 2026

Copies: Counsel